AYRES, Judge.
In this workmen’s compensation suit plaintiff seeks recovery of compensation at the rate of $26 per week as for total disability and for the duration thereof, not exceeding 400 weeks, less $234 previously paid, resulting from an alleged inguinal hernia claimed to have been sustained July *556 16, 1953, while cutting pulpwood. The defense is that plaintiff does not actually have a hernia and is, therefore, not entitled to recover. The issue is, therefore, one of fact. From a judgment of the district court in plaintiff’s favor, defendants have appealed.
A determination of the question of fact presented entails1 a review and consideration of the testimony in the case, bearing in mind the burden of proof requiring plaintiff to establish his claims to a legal certainty by a reasonable preponderance of evidence.
Plaintiff testified that, while employed by Wallace Higgs, a subcontractor of the defendant, S. J. Monroe, on July 16, 1953, in cutting pulpwood with a power saw and when pulling upon the saw, which was in a bind, he felt a sharp pain in his left groin like a wasp sting, after which he tried to continue work but could not. He reported this injury to his employer, Wallace Higgs, on the afternoon of the day of the accident. Since that date, he has neither worked nor attempted to work because his father would not permit him to do so.
A fellow employee, Furley C. Walker, in answer to leading questions, acknowledged that he knew of plaintiff getting hurt and that he was working with plaintiff. This witness had not seen plaintiff work since that occasion. Neither plaintiff, Walker nor any of his other witnesses gave any testimony of objective evidence of pain or that plaintiff suffered the usual symptoms, in addition to stinging and burning pains, of violent nausea, either producing or threatening to produce immediate vomiting, or of dizziness or any other customary or various symptoms of persons claiming to have sustained hernias, as the result of accidents occurring in the course of employment. The testimony on this point by plaintiff’s father is confined to the answer to the question, “Well, what appeared to be his condition that night and the morning following the date of the injury?” to which his reply was: “Well, he seemed to suffer pain in'the lower part of his stomach”.
After this action was instituted, plaintiff was directed to Dr. Black for an examination as a prospective employee of W. A. Boyett. During the course of the examination, plaintiff took occasion to inform the examining physician that he had pending this compensation suit. The purpose for the examination was evidently not in the interest of employment.
Plaintiff, however, did not report to a doctor until July 27, 1953, when he went to Dr. McElwee of Winnfield, who, on examination, stated he then -found a dilated ring on the left side, although there was no complete herniation. Dr. McElwee later examined plaintiff March 15, 1954. His complete report is as follows:
“The above named was seen by me on July 27, 1953 with complaint of pain in the left quadrant and groin. Examination revealed a dilated tender ring. There was not a complete bulge or herniation through the ring at that time. He stated he hurt himself while cutting pulpwood.
“A diagnosis of an incomplete tear of the internal ring and potential hernia was made. His employer was contacted and authorization obtained for surgical repair. This was not done.
“On March 15, 1954 he came into my office for examination and the following findings elicited: There is a dilated inguinal ring on the left with no herniation through it. He complained with tenderness when a finger was inserted into the ring during examination. This may be classified as a potential hernia, and I feel that he would be rejected from employment unless it is fixed because an employer would not care to take the chance of it ultimately coming through”.
The Doctor recommended an operation, and on the basis of such a recommendation, the employer and/or his insurer authorized the same, but such operation was refused.
On January 22, 1954, Dr. John T. Mosley of Winnfield examined plaintiff and made his report, reading as follows:
*557 “I to-day examined Hubert Higgs and find that he has a dilated left external inguinal ring. This is a potential hernia and he would not be acceptable for employment until after surgery*.
After plaintiff’s refusal of the operation followed by demands for compensation as for total disability, defendants arranged for examinations by Drs. H. H. Hardy and M. B. Pearce of Alexandria. Dr. Hardy made his report pnd findings, concurred in by Dr. M. B. Pearce, as follows:
“On July 16, 1953, while working in the woods, near Winnfield, using a power saw, the patient was pulling the saw out of a log, straining against the saw, when he felt a sudden, stinging pain in his left groin. There was no nausea or vomiting and no other symptoms. He continued to work for about one hour after the injury then stopped because of increase of pain. He was seen soon thereafter by Dr. McElwee, at Winnfield, who told him he had a rupture and advised surgery.
“The patient was scheduled for surgery but was not operated upon because his father objected to the operation.
“At this time he has not returned to work and claims he is unable to do so because of pain and soreness in the left inguinal region. The pain is described as dull to sharp, localized in the left inguinal region and left groin, being increased by activity, especially lifting and straining and usually relieved by lying down. There is no history of a mass in the inguinal region, and the patient denies any other symptoms. A review of the symptoms is irrelevant.
“Past History: The patient denies any previous injuries.
“Examination: The patient is a well developed, well nourished, white male, 19 years of age, who walks normally and appears to be in excellent health. Blood pressure was 140/70; Pulse 80; Respiration 16; Temperature 98.6. A complete physical examination was done which was essentially normal throughout with the following specific findings as related to the injured area.
“Abdomen: The abdomen was flat, smooth and symmetrical; there were no scars, no palpable masses or organs and no unusual tenderness or rigidity. The abdominal wall was well supported and the musculature was well developed. The right inguinal canal was well developed and well supported ; the external inguinal right was normal, and there was no evidence of hernia. On the left, the inguinal canal was normally developed and well supported. The external inguinal ring was normal in size and admitted only the tip of the index finger, and when the patient coughed or strained the external inguinal ring closed normally. There was no weakness in the walls of the canal, and there were no visible or palpable masses. The patient complained of slight pain in the left inguinal region on coughing or straining. There was no impulse on coughing and no hernia sac could be demonstrated either of the direct or indirect type.
“The external genitalia were normal, and there was no unusual pain or tenderness.
“Urine examination was negative.
“Diagnosis: No evidence of inguinal hernia.
“Discussion: I could find no inguinal hernia in this patient, and because of the controversy and the disagreeing diagnosis elsewhere, I had this patient examined by my associate, Dr. M. B. Pearce, and it was also his opinion that this patient had no inguinal hernia.
“It was also my. opinion that he had no residual evidence of the injury and is able to return to the type of work he was doing at the time of the injury and not entitled to further disability.”
Dr. James H. Eddy, Jr., of Shreveport, Louisiana, made an examination of plain *558 tiff, the result of which is contained in his report of January 8, 1954, as follows:
“On December 21, 1953 this 20 year old white male came to my office and stated that on July 16, 1953 he was pulling a power saw out of a tree when he felt a stinging pain in his left inguinal region. He states that he stopped cutting with the saw and tried to use an ax but had to stop that because of pain. He says that he saw a physician the following day who advised rest and later advised operation for a hernia.
“The patient advises that he has done no work since the time of his accident and is at present, according to his words, ‘laying around the house waiting for a settlement’.
“Physical examination showed a well developed, well nourished white male who was cooperative, and showed normal activity in and about the office. Examination of the abdomen revealed nothing of note, there is no evidence of hernia on either side. There is no undue tenderness in the cord on either side. There is no undue enlargement of the ring on either side. Examination of the left and right inguinal regions reveal essentially identical conditions on the two sides.
“It is my impression that this patient shows no hernia and is able to return to any work that he previously did.”
The conclusions of Dr. G. C. Black, Jr., who examined plaintiff, as heretofore stated, together with statement of facts in connection therewith, are as follows:
“The above captioned, seeking employment in the Woods Department of Southern Advance Bag & Paper Company, presented himself to me on January 22, 1954 for a pre-employment physical examination. The applicant volunteered the information that he currently has a compensation claim filed against Liberty-Mutual Insurance Company for potential left inguinal hernia allegedly acquired while employed by Mr. Monroe a sub-contractor for Brown Paper Mill, Monroe, Louisiana.
“Examination revealed that both external inguinal rings were a little larger than average, but no herniation on either side was elicited. According to some classifications these are potential hernias, I do not use this class and therefore do not believe this man has a hernia on either side.
“I rejected this man on the basis of his story of having already a claim pending with your company. It seems peculiar to me that a man seeking employment would volunteer the above information.”
It will be noted that Dr. Black rejected plaintiff on the basis of the pending litigation. It is noted further that Dr. Black found external rings somewhat larger than average but that this condition was the same on both sides. Apparently, Drs. McElwee and Mosley made no examination of the right side and plaintiff does not claim to have a hernia there. The Doctor stated very clearly that he did not believe plaintiff had a hernia on either side and that he did not subscribe to the classification known as “potential hernias”. The manner of detail as given by Drs. Hardy and Eddy certainly creates a most serious doubt as to whether plaintiff has a potential hernia.
Since plaintiff’s father prohibited him from doing anything, there is little weight which can be attached to any inference that he could not work or that he has suffered any disability. The only question in dispute is whether or not plaintiff has sustained an injury rendering him unable to perform manual labor of the same or similar kind or character that he was performing at the time of the injury. So far as his right to compensation, it makes no difference whether he sustained a complete or incomplete or a potential hernia, provided plaintiff became incapacitated thereby. It has been held that either kind may produce that result. Parker v. Weber-King Mfg. Co., 19 La.App. 177, 139 So. 660.
*559 Plaintiff cites and the lower court relied upon the case of Johnson v. Hillyer, Deutsch, Edwards, Inc., La.App., 185 So. 652, 655, wherein it was stated:
“Our consideration of all the testimony satisfies us that plaintiff is suffering from a direct inguinal incomplete hernia, and that this condition rendered him unable to do hard manual labor at the time of the trial. If, as testified by the three physicians and plaintiff himself, an attempt on his part to do hard manual labor would cause pain and a possible complete hernia, there is no reason for him to undergo that pain and incur that danger.”
With this pronouncement we are in full accord, but the facts of the instant case are clearly and readily distinguishable from the facts of that case. For instance, in the cited case, plaintiff there, as here, was a young man 21 years of age, who testified that he was pushing a load of lumber on a buggy to the rip saw when the load started falling back on him and he pushed the load as hard as he could when he felt a severe pain in the lower part of the stomach on both sides; that he pulled down his clothes and showed the foreman the knots on each side of his abdomen, whereupon the foreman sent him immediately to the company doctor, who, after examination, told him that he had a hernia on both sides and instructed that he be placed in bed with feet on a pillow for at least five days, after which delay the lumps had been reduced and he returned again to the doctor, who later advised an effort to work, which was undertaken, with the result that on account of the pain and lumps on his abdomen becoming larger he was forced to discontinue. A fellow employee testified that he saw plaintiff grab the lower part of his stomach and in a few minutes was shown where he was hurt.
Under the facts and circumstances of this case, as disclosed by the record, we can only conclude that plaintiff has failed to establish his claim by the requisite preponderance of evidence. The most that could be said in support of plaintiff’s petition is that he has succeeded in establishing only a slight possibility of disability resulting from an accidental injury. The statement of this court in Roberts v. M. S. Carroll Co., Inc., La.App., 68 So.2d 689, 693, is appropriate here:
“The jurisprudence of every appellate tribunal of this state has incontrovertibly established the rule that the plaintiff in a compensation case, as in other cases, bears the burden of proof. He is required to establish his claims to a legal certainty by a reasonable preponderance of the evidence. Speculation, conjecture, mere possibility, and even unsupported probability, are not sufficient to support a judgment. These principles have been stated, restated, iterated, reiterated, emphasized and reemphasized, in almost innumerable decisions, * * *
See also Driggers v. Coal Operators Casualty Co., La.App., 73 So.2d 602, and the authorities therein cited. In the latter case, we quoted from Franks v. Department of Highways for Louisiana, La.App., 43 So.2d 491, 493, where it was stated:
“The burden of proof in these cases is upon the plaintiff, and, further, as has been declared in a long line of cases, it is not sufficient for a claimant to make out a case that is merely probable, but it is required that he establish it with legal certainty; Spears v. Brown Paper Mill Co., La.App., 9 So.2d 332; Powell v. American Employers Ins. Co., La.App., 14 So.2d 333; White v. Delta Shipbuilding Co., Inc., La.App., 24 So.2d 497; Pierce v. Delta Tank Mfg. Co., La.App., 39 So.2d 908.”
For these reasons, the judgment appealed is annulled, avoided, reversed and set aside and there is now judgment in favor of the defendant, rejecting plaintiff’s demands, without the assessment of costs in view of the institution and prosecution of this suit pursuant to the provisions of LSA-R.S. 13:4525.
Reversed.